UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| RICHARD DRATZ, | |
| Plaintiff, | Civil No. 24-3811 (JRT/DLM) |
| v. | |
| JERROD TIMOTHY FORT, *acting in his individual capacity*; CAILIE KITTELSON, *acting in her individual capacity*; and CITY OF EAGAN, | **MEMORANDUM OPINION AND ORDER DENYING MOTION TO DISMISS** |
| Defendants. | |

---

Eric A. Rice, **LAW OFFICE OF ERIC A. RICE, LLC**, 1 West Water Street, Suite 275, Saint Paul, MN 55107, for Plaintiff.

Julia Kelly, **LEAGUE OF MINNESOTA CITIES**, 145 University Avenue West, Saint Paul, MN 55103, for Defendants.

Unsuspecting Plaintiff Richard Dratz was shopping at Target when law enforcement suddenly approached him, put him in handcuffs, told him he was under arrest for shoplifting, and marched him through the aisles toward the front of the store. But there was one small problem: they had the wrong guy. Dratz now brings this action against the officers who arrested him and the City of Eagan under 42 U.S.C. § 1983 for violating his constitutional rights. Defendants move to dismiss, arguing they are entitled to qualified immunity because the description they were given largely matched that of Dratz. But because the Court must accept Dratz's allegations as true at this stage of the

litigation unless they are clearly contradicted by body-worn camera footage, and because too many questions remain about the circumstances that led to Dratz's improper arrest, the Court will deny the motion to dismiss.

## BACKGROUND

**I.     FACTS**

On January 26, 2024, Eagan Police Officers Jerrod Fort and Cailie Kittelson responded to a call that a suspect was actively shoplifting at a Target store. (Am. Compl. ¶¶ 10–11, Dec. 2, 2024, Docket No. 17.)  The Incident Detail Report noted that officers knew the suspect was a middle-aged white male with a black coat and light washed blue jeans.  (Decl. Joseph Moseng ("Moseng Decl.") ¶ 3, Ex. 1 ("Incident Detail Report") at 4, Nov. 12, 2024, Docket No. 14.)  Dratz alleges that the officers knew more: that the suspect had gray hair, dark shoes, and hand tattoos, and that because he had already completed some shopping, he was likely carrying a shopping bag.  (Am. Compl. ¶¶ 11–12.)

Upon arriving at the Target, Officer Fort walked through the front door and immediately asked, "Where is he?" to a Target loss-prevention employee, who was on the phone with someone else.  (Moseng Decl. ¶ 5, Ex. 3 ("Fort BWC") at 17:43:56–17:44:10.) According to Dratz, the employee pointed directly at the actual shoplifter, who was nearby, and said, "He's on the main – he's on the main, right there." (Am. Compl. ¶¶ 13, 33; Fort BWC at 17:44:04–10.)  Officer Fort responded, "That guy with the white shoes?"  (Am. Compl. ¶ 15; Fort BWC at 17:44:11.)  Though Officer Fort claims she

responded with an affirmative "yes," Dratz claims she did not respond at all. (Am. Compl. ¶ 16.)

Thinking Dratz was the shoplifting suspect, Officers Fort and Kittelson quickly proceeded past the actual suspect and traveled several more aisles down until they reached Dratz at the far end of the store. (Am. Compl. ¶¶ 17, 19; Fort BWC at 17:44:11–53.) Without asking Dratz any follow up questions or searching his person for stolen merchandise, law enforcement immediately placed Dratz under arrest and walked him toward the front of the store. (Am. Compl. ¶¶ 20, 22, 27; Fort BWC at 17:44:56–17:46:10.)

After roughly two minutes in handcuffs, a second Target employee approached the officers to tell them they had arrested the wrong person. (Am. Compl. ¶ 29; Fort BWC at 17:46:10–14.) Officer Kittelson told him that this was the person staff had pointed at, but the second Target employee, visibly frustrated, told officers that was "completely wrong" and that the actual suspect was sitting in the loss-prevention office. (Am. Compl. ¶ 29; Fort BWC at 17:46:13–26.) Officer Kittelson released Dratz from his handcuffs, and both officers apologized. (Am. Compl. ¶ 30; Fort BWC at 17:46:30–41.) Dratz immediately asked for both officers' badge numbers. (Am. Compl. ¶ 31; Fort BWC at 17:46:45–48.)

Officers Fort and Kittelson then proceeded to the Target office where the actual suspect was being held and eventually placed him under arrest. While Officer Kittelson was placing the suspect under arrest, Officer Fort asked the first loss-prevention

employee to step outside to speak to him.  (Fort BWC at 17:48:05–09.)  The following discussion occurred:

> **Fort**: "So you pointed at that other guy."
> **Employee**: "I pointed to the guy that – I pointed to him [the suspect in custody].  Like I pointed to him.  I didn't see any other guy but him."
> **Fort**: "So you pointed to that individual—"
> **Employee**: "No I didn't."
> **Fort**: "I said with the white shoes? And you said yeah."
> **Employee**: "No.  No, I didn't."
> **Fort**: "I'm not going to have this discussion with you."
> **Employee** (rolling her eyes): "Ok."
> **Fort**: "That is what happened."
> **Employee**: "Ok."

(*Id.* at 17:48:09–32.)

Later, concerned that Fort was improperly pressuring her to state that she had indicated to Fort that Dratz was the suspect, the Target loss-prevention employee called the Chief of the Eagan Police Department directly to report her concerns about Fort's behavior. (Am. Compl. ¶ 34.)

## II.   PROCEDURAL HISTORY

Dratz filed an Amended Complaint containing two counts: (1) against Officers Jerrod Fort and Cailie Kittelson in their individual capacities for unlawful seizure and arrest under 42 U.S.C. § 1983, and (2) against the same defendants and the City of Eagan for the common law tort of false arrest. (Am. Compl. ¶¶ 39–55.) Defendants moved to dismiss. (Mot. Dismiss, Dec. 13, 2024, Docket No. 20.) Defendants also filed declarations that

included the Incident Detail Report, body-worn camera footage, and Target store camera footage. (*See* Moseng Decl.)

## DISCUSSION

### I. STANDARD OF REVIEW

In reviewing a Rule 12(b)(6) motion, the Court views the complaint in "the light most favorable to the nonmoving party." *Longaker v. Bos. Sci. Corp.*, 872 F. Supp. 2d 816, 819 (D. Minn. 2012). The Court considers all facts alleged in the complaint as true to determine whether the complaint states "a claim to relief that is plausible on its face." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility,'" and therefore must be dismissed. *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). Although the Court accepts the complaint's factual allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Therefore, to survive a motion to dismiss, a complaint must provide more than "'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

## II.  ANALYSIS

### A.  Evidence Embraced by the Pleadings

Before the Court reaches the allegations in the Complaint, the Court must determine whether it is permissible to consider the video evidence or the Incident Detail Report.

When considering a motion to dismiss under Rule 12(b)(6), "the court generally must ignore materials outside of the pleadings." *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999).  However, the Court may consider materials "that are part of the public record," that "do not contradict the complaint," or that are "necessarily embraced by the pleadings." *Porous Media Corp.*, 186 F.3d at 1079 (quotations omitted); *see also Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 697 n.4 (8th Cir. 2003).  "Such evidence may not, however, be viewed for the truth of the matters asserted." *LeMay v. Mays*, 18 F.4th 283, 289 (8th Cir. 2021).

In the Eighth Circuit, "[v]ideos of an incident are necessarily embraced by the pleadings." *Ching v. City of Minneapolis*, 73 F.4th 617, 621 (8th Cir. 2023).  The Court can thus cast aside any facts in the Complaint that are "blatantly contradicted" by the footage, though "[i]nconclusive video evidence must be construed in the plaintiff's favor." *Abdullah v. Lepinski*, No. 23-121, 2023 WL 5515895, at *2 (D. Minn. Aug. 25, 2023) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)).  Therefore, the Court will consider the body-worn camera footage in the present motion, construing any inconclusive evidence in Dratz's favor.

But the Incident Detail Report will be used in a more limited way. At least one court in this District has considered Incident Detail Reports embraced by the pleadings. *See Crow v. Rasmussen*, No. 23-2403, 2024 WL 2014211, at *3–4 (D. Minn. May 7, 2024) (considering an Incident Detail Report on a motion for judgment on the pleadings "because the only reasonable inference to be drawn from the video footage of the encounter and the allegations in the Complaint is that the Officers consulted the NCIC information contained in the Incident Detail Report before they engaged with [the plaintiff]"). The Incident Detail Report indicates that the officers were given the following description of the Target suspect: "male is a middle aged w/m, wearing a black coat and light washed blue jeans." (Incident Detail Report at 4.) But Dratz's Complaint alleges that the officers had other, more specific information as well. So, the Court will consider the information in the Incident Detail Report as only some of the information available to the officers and also accept as true what information the Complaint alleges the officers knew.

### B. Qualified Immunity

Qualified or "good faith" immunity shields government officials from damages liability under 42 U.S.C. § 1983 so long as they did not violate "clearly established constitutional rights of which a reasonable official would have known." *Murphy v. Arkansas*, 127 F.3d 750, 755 (8th Cir. 1997); *see also Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Courts assess qualified immunity through an "objective legal reasonableness" lens "in light of the legal rules that were clearly established" at the time the official acted. *Anderson v. Creighton*, 483 U.S. 635, 639 (1987) (quotations omitted). In determining

whether qualified immunity applies, courts consider "(1) whether the facts alleged or shown . . . establish a violation of a constitutional right, and (2) whether that constitutional right was clearly established at the time of the alleged misconduct, such that a reasonable official would have known that [their] actions were unlawful." *McCaster v. Clausen*, 684 F.3d 740, 746 (8th Cir. 2012).

The Fourth Amendment protects a person against "unreasonable searches and seizures." U.S. Const. amend. IV. To comply with the Fourth Amendment, a warrantless arrest must be supported by probable cause. *Maryland v. Pringle*, 540 U.S. 366, 370 (2003). Probable cause means a reasonable ground for belief of guilt that is particularized with respect to the person seized. *Id.* at 371.

It is clearly established that arresting a person without probable cause violates the Fourth Amendment to the Constitution. *Kuehl v. Burtis*, 173 F.3d 646, 649 (8th Cir. 1999). Still, an objectively reasonable but mistaken belief of probable cause preserves the defense of qualified immunity. *Id.* at 649–50 (citing *Hunter v. Bryant,* 502 U.S. 224, 228–29 (1991)). In other words, "[t]he issue for immunity purposes is not probable cause in fact but arguable probable cause," meaning the Court must ask "whether the officer should have known that the arrest violated plaintiff's clearly established right." *Habiger v. City of Fargo*, 80 F.3d 289, 295 (8th Cir. 1996) (quotation omitted).

The Court has reviewed the Complaint, the body-worn camera footage, and the Incident Detail Report. Construing all ambiguities in Dratz's favor, the relevant facts are now these:

Officers were alerted that a suspect was shoplifting at Target. By the time they arrived, they knew he had a black jacket, gray hair, hand tattoos, and dark shoes. They knew he had already purchased some items legitimately and would likely be carrying a grocery bag. Upon arrival, a Target employee pointed directly at the actual shoplifter, who was nearby. Officer Fort asked whether she meant a person much farther away with white shoes. The Target employee did not answer him. Rather than arresting the person she pointed out, who matched the description officers had been given, officers proceeded much farther down the main aisle of the store and, without asking any preliminary questions, arrested a man who did not match the description they were given. After roughly two minutes in handcuffs, Dratz was freed only when a different Target employee alerted officers they had arrested the wrong suspect. Officer Fort then unsuccessfully attempted to pressure the Target employee to change her story and state that she had in fact pointed to Dratz.

Those facts do not lead to the conclusion that the officers had, or even arguably had, probable cause.

According to the Complaint, officers ignored several facts that would have alerted them that Dratz was not the suspect in question: the Target employee pointed to a

different person, and Dratz did not have a shopping bag, dark shoes, or hand tattoos.  *See Duffie v. City of Lincoln*, 834 F.3d 877, 884 (8th Cir. 2016) (noting officers "may not turn a blind eye to facts that undermine reasonable suspicion").  Once they approached Dratz, officers failed to ask a single question to help them confirm they had the right person.  *See Bell v. Neukirch*, 979 F.3d 594, 604 (8th Cir. 2020) (Law enforcement "have a duty to conduct a reasonably thorough investigation prior to arresting a suspect, at least in the absence of exigent circumstances and so long as law enforcement would not be unduly hampered if the agents wait to obtain more facts before seeking to arrest.").

It is possible Officer Fort genuinely believed that the Target employee was pointing at Dratz.  *See Devenpeck v. Alford*, 543 U.S. 146, 153 (2004) (noting that while an officer's subjective intent in arresting a person will not affect a probable cause analysis, the court should still consider "the facts that he knows").  But at least at the motion to dismiss stage, where the Court must also accept as true the allegations in the Complaint unless they are clearly contradicted by video footage, that belief was not reasonable.  It is not reasonable for law enforcement to walk into a store, ask an employee who was shoplifting, be pointed toward a nearby person who matches a description of the shoplifter, ignore that direction, and instead arrest a person on the far end of the store who does not match the suspect's description.  More information may come to light during discovery, but at this point there are simply too many outstanding factual questions to conclude that officers arguably had probable cause to arrest Dratz.

Accordingly, the Court finds that the Defendants are not due qualified immunity at this stage of the litigation and will deny the Motion to Dismiss.

## CONCLUSION

The Court may consider the body-worn camera footage and the Incident Detail Report because they are embraced by the pleadings; however, the Court must still construe inconclusive video evidence in favor of Dratz, and it must accept as true all allegations in the Complaint that are not clearly contradicted by the video and Incident Detail Report. Given that deferential standard at this stage of the litigation, there are too many unanswered factual questions for the Court to determine whether the officers had probable cause to arrest Dratz that day. Officers therefore are not entitled to qualified immunity, and the Court will deny the Motion to Dismiss.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss [Docket No. 20] is **DENIED**.

DATED: June 5, 2025  
at Minneapolis, Minnesota.

                                                             JOHN R. TUNHEIM  
                                                United States District Judge